UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Dennis P. Bienkowski, | ) | C/A No. 4:11-2452-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Jordan Properties, Inc. and | ) | |
| Crown Reef Hotel, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Dennis Bienkowski ("Bienkowski" or "Plaintiff"), who was born in 1948, was formerly employed as, *inter alia*, the Night Manager at the Crown Reef Hotel in Myrtle Beach, South Carolina. Plaintiff was laid off or terminated on November 2, 2009. Claiming his employment with Defendants ended because of his age, Plaintiff exhausted his administrative remedies and brought this suit claiming age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). *See* Am. Compl., ECF No. 14. Defendants Jordan Properties, Inc. and Crown Reef Hotel, LLC ("Jordan Properties," "Crown Reef," or "Defendants") dispute Plaintiff's claim and move for summary judgment on Plaintiff's only cause of action. Defs.' Mot. Summ. J., ECF No. 39.

This matter is before the court on Defendants' Motion. Having considered Defendants' Motion and Memorandum in Support, Plaintiff's Response, ECF No. 47, and

Defendants' Reply, ECF No. 78, the undersigned submits this report[1] recommending Defendants' Motion be *granted in part and denied in part*, as set forth herein.

I.    Factual Summary

The following facts are either undisputed or are taken in the light most favorable to Plaintiff, to the extent they find support in the record.

Plaintiff moved to Myrtle Beach, South Carolina, in 2003 after he retired from working 34 years as a machinist in Cleveland, Ohio. Pl. Dep. 8:18-25, ECF No. 47-1. Upon relocating, he applied for a position with Crown Reef Hotel. Crown Reef Hotel is a 514-room hotel and conference center in Myrtle Beach. Ruedinger Aff. ¶ 4, ECF No. 39-16. On or about December 12, 2003, General Manager of the property, Donna Ruedinger ("Ruedinger") approved Plaintiff's hire as a Loss Prevention Officer for the Security Department upon the recommendation of the Director of Security, Wayne Arrowood ("Arrowood"). *See* Ex. A to Defs.' Mem., ECF No. 39-1; Ruedinger Aff. ¶ 10, ECF No. 39-16. At the time of his hire, Plaintiff was approximately 55½ years old and Ruedinger was approximately 59 years old. Pl. Dep. 9:8-9, ECF No. 47-1; Ruedinger Aff. ¶ 6, ECF No. 39-16. Plaintiff's job duties were to secure the safety of the hotel guests, and to protect the hotel's assets. Ruedinger Dep. 38:5-15, ECF No. 55.

Approximately six months later, in June 2004, Defendants promoted Plaintiff to the position of Loss Prevention Supervisor. Ruedinger Dep. 40:3-22, ECF No. 55. As a Loss Prevention Supervisor, Plaintiff supervised the entire Loss Prevention staff on the second shift and was responsible for, among other things, training, discipline, and terminations of

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28, U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C. Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration.

security officers, general security of the property, and conducting investigations at the property. Ruedinger Dep. Ex., ECF No. 57 at 7. As Loss Prevention Supervisor, Plaintiff reported to Arrowood, who had been promoted to Night Manager; Arrowood reported to Ruedinger. Arrowood Dep. 31:1-3, ECF No. 53.  Ruedinger reported to Woody Crosby ("Crosby"), who was President and CEO of Defendant Jordan Properties. Ruedinger Dep. 19:20-20:6, ECF No. 55. At the same time, Arrowood's wife, Denise Arrowood, was employed by Defendants as the Controller and reported to Ruedinger.  W. Arrowood Dep., 16-18, 41, ECF No. 53.  Throughout 2004 and 2005, Arrowood rated Plaintiff "outstanding" on performance evaluations and recommended several pay increases for him. Ruedinger Dep. 44-46, ECF No. 55.

On or about July 17, 2006, Arrowood resigned as Night Manager, with July 31, 2006, as his last day of work. W. Arrowood Dep. 32:13-33:4, ECF No. 53. After Arrowood resigned, no one held the Night Manager position until October 2006. Ruedinger Dep. 52:16-24, ECF No. 56.  According to Plaintiff, after Arrowood resigned, Plaintiff performed the duties of Night Manager. Pl. Aff. ¶ 3, ECF No. 48-1.  In his October 2006 annual evaluation, Ruedinger rated Plaintiff "outstanding." Ruedinger Dep. 49:1-10, ECF No. 56. As part of this evaluation, Ruedinger wrote a memo to Crosby stating that Plaintiff was "capable of monitoring the entire property" and that "[r]ecently, he has temporarily assumed the duties of Night Manager and does an admirable job of seeing that the property is presentable at all times." Ruedinger Dep. Ex., ECF No. 58 at 8. In 2006, Ruedinger promoted Plaintiff to the position of Loss Prevention Manager. Ruedinger Aff. ¶ 12, ECF No. 39-16. As Loss Prevention Manager, Plaintiff was responsible for all operations of the Loss Prevention

Department. *Id.* Plaintiff was not promoted to the Night Manager position previously held by Arrowood.

In October 2006, Crosby and Ruedinger hired a female from outside the company, Ann Lusk ("Lusk"), to fill the Night Manager position. Ruedinger Dep. 52:22-53:23, ECF No. 56. At the time of her hire, Lusk was approximately 48-years-old and younger than Plaintiff. Pl. Aff. ¶ 4, ECF No. 48-1, Lusk Hiring Doc., ECF No. 78-2. Defendants have a policy that for filling vacancies above entry-level positions, management would try to promote from within if qualified applicants were known to be available. Ruedinger Dep. 35:3-10, ECF No. 55. After Lusk was hired, Plaintiff was asked to train Lusk and Plaintiff complied. Pl. Aff. ¶ 5, ECF No. 48-1. Lusk resigned in March 2007. Ruedinger Dep. 54:15-21, ECF No. 56. On March 3, 2007, Ruedinger promoted Plaintiff to Acting Night Manager. Ruedinger Aff. ¶ 13, ECF No. 39-16. Ruedinger placed the "acting" tag on the title to see if Plaintiff would be able to fulfill the computer and desk relations skills. Ruedinger Dep. 55:10-16, ECF No. 56. Ruedinger evaluated Plaintiff as "above-average," provided him with a job description for the Night Manager position, and advised him that he had until September 1, 2007, to demonstrate he could perform the listed duties. Ruedinger Aff. ¶ 15, ECF No. 39-16.

In May 2008, Ruedinger removed the "acting" designation from Plaintiff's title and gave him a raise. Ruedinger Dep. 59:1-12, ECF No. 56. She also evaluated Plaintiff, rating his performance as "above-average." *See* Ruedinger Dep. Ex., ECF No. 59 at 2-5. Plaintiff alleges that during the course of this evaluation, Ruedinger told him that "he did not seem like the same person that was hired; that maybe it was because of his age; and that maybe

because of plaintiff's age, the pressures of the job were getting to be too much for plaintiff to handle." Pl.'s Resp., ECF No. 47 at 5; Pl. Aff. ¶ 8, ECF No. 48-1.[2]

In September 2008, Ruedinger issued Plaintiff a Written Warning for failing to properly secure money. Ruedinger Aff. ¶ 17, ECF No 39-16. On October 16, 2008, Ruedinger issued a memo to Plaintiff stating her concerns that Plaintiff had not met expectations regarding front desk computer proficiency and customer service. The memo gave Plaintiff 90 days to meet those goals. *Id.* ¶ 18; *see also* ECF No. 59 at 9. At some point during a slow period in 2008, Plaintiff volunteered to take a $5,000 pay cut and work six days a week instead of five. Pl. Aff. ¶ 6, ECF No. 48-1. Ruedinger did not respond to Plaintiff's offer. *Id.*

In July and early August 2009, a number of hotel guests complained about Plaintiff and, on August 6, 2009, Ruedinger issued Plaintiff a second Written Warning. Ruedinger Aff. ¶ 19, ECF No. 39-16. Plaintiff disputed the write-up. Pl. Dep. 34:9-35:17, ECF No. 47-1.[3] Plaintiff asserts that during the course of disciplining Plaintiff, Ruedinger told him "to be careful because somebody [Plaintiff's] age would have a hard time finding another job." *Id.* at 36:6-9. Plaintiff took this comment as an insult to his age and felt it meant that, in Ruedinger's view, because of his age if he was written-up again, he would be fired. *Id.* at 36:13-16; 41:10-19.

The Myrtle Beach tourism industry was severely affected by the sharp economic downturn that began in 2008. Crown Reef, like many other hotels, experienced a substantial

---

[2] In his affidavit dated August 20, 2012, Plaintiff clarifies that Ruedinger's remark was made in May 2008, and not in winter 2009 as he stated in his affidavit submitted to the Equal Employment Opportunity Commission ("EEOC"). *See* Pl. EEOC Aff., ECF No. 49-1. The court notes that in his deposition of April 17, 2012, Plaintiff testified that the remark was made in January or February of 2009. *See* Pl. Dep. 32-33; ECF No. 47-1.

[3] In his deposition Plaintiff states this write-up occurred in April 2009.

decrease in occupancy rates during the 2008 peak season and continued to see occupancy rates diminish during the off-season. Ruedinger Aff. ¶ 20, ECF No. 39-16. On March 20, 2009, Crosby sent an internal memorandum to Ruedinger and others stating:

> As a result of the continued decline in the economy and the fact that our business has been down so much since the beginning of this year, I am forced to institute a moratorium on all employee raises for the time being until I see how the summer is shaping up and the economy changes. Proactive action will enable Crown Reef to manage through these tough times.

Salary Freeze Mem., ECF No. 59 at 10.

Because of the payroll freeze Ruedinger did not evaluate Plaintiff in 2009. Ruedinger Dep. 61:10-14, ECF No. 56. However, in April 2009, another employee, Nicholas Howard ("Howard"), received a performance evaluation and was promoted from Acting Director of Security to Director of Security. Howard Dep. Ex., ECF No. 51 at 20-24. At the time of his promotion Howard was approximately 30 years old. Howard Dep. 9:18-19, ECF No. 51. Ruedinger asserts that the raise freeze implemented by Crosby did not apply to promotions. Ruedinger Aff. ¶ 10, ECF No. 78-3.

Crown Reef Hotel continued to experience a significant reduction in occupancy rates and revenues during the peak season (Easter to Labor Day) of 2009, and Ruedinger was faced with having to reduce staff. Ruedinger Aff. ¶ 21, ECF No. 39-16. On November 2, 2009, at a management team meeting, Ruedinger discussed concerns about the hotel budget. *Id.* ¶ 23. Ruedinger analyzed each management position and determined the Night Manager position was the position that could best be eliminated without harming guest services. *Id.* ¶ 25. Later that day Ruedinger told Plaintiff his position had been eliminated; however, she told him she would provide him with a letter of recommendation, and that if a job opened with Defendants, he could apply. *Id.* ¶ 26; Ruedinger Dep. 73:2-23, ECF No. 83. Ruedinger

admitted that Plaintiff's termination was not based on job performance. Ruedinger Dep. 72:8-11. At the time of his termination Plaintiff's salary was $590 per week. *See* ECF No. 59 at 2, 12.

After Plaintiff was terminated, the other managers took over his duties and Howard, the Director of Security, performed about 75% of the Night Manager duties. Howard Dep. 39:15-25, ECF No. 51. For the remainder of 2009 and the first-quarter of 2010 the Crown Reef Hotel did not employ a Night Manager. Ruedinger Aff. ¶ 28, ECF No. 39-16. In anticipation of the upcoming 2010 peak season, Ruedinger requested permission to hire a Seasonal Night Manager. *Id.* The proposed new position would be temporary, offer no benefits, and pay less than when the hotel employed a full-time Night Manager. *Id.* During a managers' meeting on March 23, 2010, Ruedinger informed the managers she hoped to hire a Seasonal Night Manager to assist the various departments during peak season. *Id.* ¶ 29. Denise Arrowood was present at the meeting and told her husband, former employee Wayne Arrowood, that the Night Manager position was open at Defendants' Crown Reef Hotel. *Id.* ¶ 30; W. Arrowood Dep. 46:4-10, ECF No. 53. Arrowood submitted a resume and discussed the position with Ruedinger. W. Arrowood Dep. 46:18-20, 54:3-56:5, ECF No. 53. Arrowood was hired as Night Manager on April 8, 2010. *Id.* at 49:2-7. Ruedinger admitted that she never posted the Night Manager position and never informed Plaintiff that the position was open. Ruedinger Dep. 97:8-18, ECF No. 83. Plaintiff testified that he "checked on the computer, the newspapers daily, from the day [he] was eliminated" to see if there were openings at Crown Reef and in looking for another job. Pl. Dep. 52:12-16, ECF No. 47-1.

Beginning September 16, 2010, Crown Reef again operated without a Night Manager. Ruedinger Aff. ¶ 35, ECF No. 39-16. During the 2010-2011 off season, Director of Security

Howard assisted with duties typically performed by the former Night Manager or Seasonal Night Manager. *Id.* In May 2011, Ruedinger was again authorized to hire a Seasonal Night Manager and, to save money, Ruedinger transferred Howard to the position of Seasonal Night Manager for the 2011 season. *Id.* ¶ 36. Howard continued his duties as Director of Security. *Id.* On May 10, 2011, Howard's title was changed to Seasonal Night Manager with an increase in salary; he served in this role until October 4, 2011, when he was returned to his position as Director of Security. *Id.* Even though Howard's job title changed back to Director of Security in the off season, Ruedinger kept Howard's salary the same, and he still performed 75% of the Night Manager duties. *Id.*; Howard Dep. 18:18-19:5, ECF No. 51. Beginning October 5, 2011, Crown Reef did not have a Night Manager. Ruedinger Aff. ¶ 38, ECF No. 39-16. Crown Reef did not employ a Seasonal Night Manager for the 2012 season. *Id.*

II.    Discussion

A.  Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of

material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B.  Establishing Age Discrimination Pursuant to the ADEA[4]

The ADEA provides in pertinent part that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). To establish a disparate-treatment claim under the ADEA, a plaintiff may avert summary judgment and establish his or her claim using one of two avenues of proof. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may "prove by a preponderance of the evidence

---

[4] Plaintiff claims injury based both on his termination and his failure to be recalled/rehired. Am. Compl. ¶ 39 ("[D]efendants have violated the ADEA by firing or laying plaintiff off because of his age and also by refusing and failing to rehire or recall plaintiff back to work because of his age."). In opposing Defendants' Motion, Plaintiff focuses in large measure on his termination claim, using evidence of Defendants' failure to recall him to demonstrate pretext. Plaintiff briefly argues that Defendants violated the ADA by terminating him and by failing to recall him twice. *See* Pl.'s Resp. 22, ECF No. 37. The court addresses Plaintiff's claim of separate failure-to-recall ADA claims below.

(which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 177 (2009). In using this method, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 180.  Alternatively, a plaintiff may proceed using the burden-shifting, or "pretext" framework.[5]  *Hill*, 354 F.3d at 285. To prevail under the burden-shifting framework, Plaintiff must first establish a prima facie case of age discrimination.  If Plaintiff can establish a prima facie case, the burden then shifts to the Defendants to produce a legitimate, nondiscriminatory reason for its actions against Plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If Defendants meet this burden of production, the burden then shifts back to Plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. *Hill*, 354 F.3d at 285. Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves*, 530 U.S. at 143.

As set forth by both Plaintiff and Defendants, to establish a prima facie case of unlawful age discrimination, a plaintiff must show that (1) he is a member of the protected

---

[5] With respect to the evidentiary framework applied to a disparate treatment claim under the ADEA, the Fourth Circuit has continued to apply the burden-shifting method of proof pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see Warch v. Ohio Cas. Ins. Co.,*435 F.3d 510, 513 (4th Cir. 2006); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413-14 (4th Cir. 2010), despite the Supreme Court's statement in *Gross* that it "has not definitively decided" whether the *McDonnell Douglas* framework, which was first developed in the context of Title VII cases, "is appropriate in the ADEA context." *Gross*, 557 U.S. at 174 & n.2. Here, both parties analyze Plaintiff's claim using the *McDonnell-Douglas* framework. *See* Defs.' Mem. in Supp. Summ. J. 13, ECF No. 39; Pl.'s Resp. 13-14, ECF No. 47.

ADEA class (40 years of age or older); (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications. Defs.' Mem. 13, ECF No. 39; Pl.'s Resp. 10, ECF No. 47. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *Warch*, 435 F.3d at 513; *Causey v. Balog*, 162 F.3d 795, 802 & n.3 (4th Cir. 1998).

C.  Plaintiff's Direct-Evidence Claim

In passing, Plaintiff submits that several age-related remarks purportedly made by Ruedinger "may well constitute direct evidence." Pl.'s Resp. 15, ECF No. 47.

According to Plaintiff,[6] during his May 2008 evaluation, Ruedinger told Plaintiff "he did not seem like the same person that was hired; that maybe it was because of his age; and that maybe because of plaintiff's age, the pressures of the job were getting to be too much for plaintiff to handle." Pl.'s Resp. 5, ECF No. 47; Pl. Dep. 33:2-34:3, 86:25-87-5, ECF No. 47-1; EEOC Aff. ¶¶ 8, 9, ECF No. 49-1. In August 2009, Ruedinger had written Plaintiff up concerning negative comments guests made about him. Plaintiff indicates that, after disputing the comments in a discussion with Ruedinger, she told him "to be careful because somebody plaintiff's age would have a hard time finding another job." Pl.'s Resp. 5-6, ECF No. 47; Pl. Dep. 35:25-37:19, 41:1-25, ECF No. 47-1.[7]

---

[6] Ruedinger disputes having made either of these age-related comments. *See* Defs.' Reply 4, ECF No. 78. However, for purposes of considering Defendants' Motion, the court accepts these statements as true.

[7] Although Plaintiff indicated in his deposition that this took place in April 2009, the written warning given is dated August 6, 2009. *See* Aug. 6, 2009 Employee Warning, ECF No. 39-10.

Plaintiff's entire argument that the remarks are direct evidence follows:

Defendant mistakenly argues that the above two age-related remarks are stray remarks and, thus, inadmissible. First, these remarks very well may constitute direct evidence in that they were uttered by the decision maker in the course of an evaluation and discipline. But the real point is that, even if the statements do not constitute direct evidence, they are still admissible as circumstantial evidence to prove pretext.

Pl.'s Resp. 15, ECF No. 47 (citations omitted).

To defeat a motion for summary judgment under the direct evidence scheme, a plaintiff must "produce direct evidence of a stated purpose to discriminate [on the basis of age] and/or circumstantial evidence of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact." *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992) (internal quotation marks omitted). To survive summary judgment based on direct evidence of age discrimination, an ADEA plaintiff "must present evidence which demonstrates a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision." *Martin v. Alumax of S.C., Inc*., 380 F. Supp. 2d 723, 730 (D.S.C. 2005) (internal quotation marks and citations omitted).

In their Reply, Defendants focus on the age-related remarks in the context of whether they could be direct evidence of age discrimination. Defs.' Reply 5 n.2, ECF No. 78. Defendants note that the alleged statements were made in May 2008 and in August 2009, making them too remote in time to Plaintiff's November 2009 termination to provide competent direct evidence of discrimination. *Id.*

The undersigned agrees with Defendants. Although "isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the

adverse employment action." *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 306 (4th Cir. 2008) (citing *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994)). Further, the alleged first remark took place during the course of Ruedinger's evaluation of Plaintiff during which Plaintiff received a promotion and a raise. *See* Ruedinger Dep. 59:1-12, ECF No. 56. To the extent Plaintiff argues the age-related remarks provide sufficient direct evidence of age discrimination to survive Defendants' Motion, such argument is without merit. Plaintiff has not put forth sufficient direct evidence for his ADEA claim to survive summary judgment. The court now considers whether Plaintiff's ADEA claim survives summary judgment based on indirect, circumstantial evidence.

    D.  Plaintiff's Circumstantial-Evidence Termination Claim

       1.  Plaintiff's Prima Facie Case

The parties' briefs principally focus on Plaintiff's ADEA termination claim using the *McDonnell-Douglas* burden-shifting framework set forth above. Plaintiff argues he has established each of the four elements necessary to prove his prima facie case under the ADEA. Defendants concede Plaintiff has established three of the four elements:  (1) that Plaintiff is part of the protected class; (2) that he was qualified for the job and met the employer's legitimate expectations; and (3) that Plaintiff was discharged despite his qualifications and performance. Defs.' Mem. 13-14, ECF No. 39 (citing *Causey*, 162 F.3d at 802 & n.3). Defendants claim Plaintiff cannot establish the fourth element of the prima facie case—(4) that he was replaced by someone substantially younger with comparable qualifications. *Id.*

Defendants argue Plaintiff cannot satisfy the fourth element because he cannot demonstrate he was "replaced" by a "substantially younger" worker. Defs.' Mem. 14 (citing

*Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429-30 (4th Cir. 2000)). They submit that, because Plaintiff's position as fulltime Night Manager was eliminated in 2009, no one "replaced" Plaintiff as Night Manager, making it impossible for the fourth element of the prima facie case to be established. Defendants cite to Plaintiff's deposition testimony that he understood the night-manager position was being eliminated when he was terminated. Pl. Dep. 52:24-25, ECF No. 47-1.

In response, Plaintiff submits that he can satisfy the fourth element of the prima facie ADEA claim because the record is clear that Defendants transferred some or most of his duties as Night Manager to younger individuals. Pl.'s Resp. 11-13, ECF No. 47. In particular, Plaintiff submits that, just after he was terminated, Director of Security Nicholas Howard took over most of Plaintiff's duties.  It is undisputed that Howard was born in 1978, making him approximately 30 years younger than Plaintiff.  Howard Dep. 9:18-19, ECF No. 51. As Howard indicated in his testimony, after Plaintiff was discharged, other managers, including Howard, took over Plaintiff's Night Manager duties. Howard Dep. 39:15-23, ECF No. 51. Howard testified that he was doing "about 75 percent" of the Night Manager duties after Plaintiff was laid off. *Id.* at 39:21-15; *see also id.* at 34:5-16.

Plaintiff also argues that Defendants' March 2010 hiring of former employee Wayne Arrowood as Night Manager further evidences Plaintiff's having been replaced by a younger person. Born in 1962, Wayne Arrowood is approximately 13-14 years younger than Plaintiff. Employee Information, ECF No. 54 at 17 (indicating Arrowood's date of birth).  Wayne Arrowood testified that, in March 2010, he had learned from his wife, Crown Reef employee Denise Arrowood, that the position of Night Manager was open. W. Arrowood Dep. 45:23-46:14, ECF No. 53. Mr. Arrowood then took his resume to Ruedinger and spoke with her

about the job. *Id.* at 45:24-46:20, ECF No. 53. Mr. Arrowood was hired April 8, 2010 as a Seasonal Night Manager. W. Arrowood Dep. 49:2-7-49:7, ECF No. 53; Employee Information, ECF No. 54 at 17. At the time Arrowood was hired as Seasonal Night Manager, Arrowood's annual salary was $30,160. ECF No. 54 at 17. When Plaintiff was terminated as Night Manager in November 2009, his annual salary was $30,680. *See* ECF No. 59 at 2, 12 (indicating Pl.'s weekly salary at time of termination was $590, which over the course of 52 weeks equals $30,680).

Finally, Plaintiff points to the May 2011 promotion of Howard from Director of Security to Seasonal Night Manager as further evidence that he was replaced by someone younger. *See* N. Howard Dep. 30:9-31:1, Payroll Status Change, ECF No. 51 at 9-10, 26. With this promotion, Howard's pay rose from $462/week to $577/week. *Id.* Howard's job title went back to Director of Security in the off-season; however, he kept the raise and continued to perform 75% of the Night Manager duties.

In considering these arguments, the court is cognizant that a plaintiff's burden of establishing a prima facie case of discrimination is not onerous. *Burdine*, 450 U.S. at 253. Considering the relevant facts in a light most favorable to Plaintiff, the undersigned is of the opinion that Plaintiff has established all elements of the prima facie case.

Defendants urge the court to find in their favor, arguing that, because both Howard and Arrowood were working as "seasonal" Night Managers, they had not "replaced" Plaintiff as Night Manager because there was no longer a permanent position called Night Manager. Defendants cite no cases that support their argument that a position labeled differently cannot provide the basis for a "replacement" for purposes of establishing the prima facie case in an ADEA claim. Rather, the case they cite in support is factually inapposite. Defs.' Br. 14

(citing *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420). In *Stokes*, the court focused not on what could constitute "replacement" by a younger individual, but on elements not at issue here.

On the other hand, cases provided by Plaintiff offer support for finding the fourth element of the prima facie ADEA claim is satisfied when some of a former employee's duties are transferred to a younger individual. *See, e.g.*, *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917 (4th Cir. 2007). In that case, the district court had granted summary judgment in favor of defendants as to plaintiff's ADEA claim, as well as other claims. On appeal, the Fourth Circuit Court of Appeals reversed as to the ADEA claim, finding plaintiff had established a prima facie case under the ADEA. 241 F. App'x at 927. The 55-year-old plaintiff contended he satisfied the fourth element because his former employer had transferred some of his job duties to a younger employee and had outsourced some of his duties. *Id.* In response, the employer argued plaintiff could not establish his prima facie ADEA claim because it had eliminated plaintiff's position and because the younger employees were distinct. *Id.* The Fourth Circuit found plaintiff had submitted evidence sufficient to demonstrate that his job had been transferred to younger workers. *See id.* (noting some of plaintiff's duties had been transferred to a 45-year old employee and then hired a 40-year old employee). *See also Duffy v. Belk, Inc.*, 477 F. App'x 91, 94-95 (4th Cir. 2012) (finding 61-year-old terminated plaintiff had established fourth element of prima facie ADEA claim by showing some of his duties had been transferred to a 41-year-old employee, although technically employer had transferred duties to a newly created position that combined his prior job duties with the job duties of the 41-year-old employee).

17

Other than argue Plaintiff was never "replaced" because his position of Night Manager was eliminated and only seasonal positions have been filled since, Defendants do not argue that Plaintiff's Night Manager duties had not been assumed by others, including Arrowood in the 2010 peak season and Howard in the 2011 peak season. *See* Defs.' Mem. 14. Further, it is undisputed that Arrowood is 13-14 years younger than Plaintiff and Howard is approximately 30 years Plaintiff's junior. Defendants do not argue that the age differences between Plaintiff and these Seasonal Night Managers is not "substantial" enough to satisfy the portion of the fourth element that requires replacement by a "substantially younger" worker. *See Dugan v. Albemarle Cnty. Sch. Bd.,* 293 F.3d 716, 721 (4th Cir. 2002); *Causey,* 162 F.3d at 802 & n.3. *See* Defs.' Mem. 14 (arguing Plaintiff has not satisfied his prima facie ADEA claim because Plaintiff's position was eliminated, meaning he was not "replaced" by the Seasonal Night Managers).

Defendants' argument is unavailing. Accordingly, the undersigned recommends a finding that Plaintiff has established a prima facie ADEA termination claim.

### 2. Defendants' Legitimate Non-Discriminatory Reason for Plaintiff's Termination/Plaintiff's Evidence of Pretext

Having determined Plaintiff has established a prima facie ADEA claim, the court continues its analysis using the *McDonnell-Douglas* burden-shifting framework. Once Plaintiff has satisfied his burden of establishing a prima facie case, the burden shifts to Defendants to provide a legitimate, non-discriminatory reason for its actions. *See Burdine,* 450 U.S. at 254. To satisfy their burden here, Defendants are not required to prove the absence of a discriminatory motive; rather, they must articulate some legitimate reason for its action. *EEOC v. Clay Printing Co.*, 955 F.2d at 941. Defendant's burden here is one of

production, not persuasion, *id.*, nor can it involve a credibility assessment. *Reeves*, 530 U.S. at 142.

Here, Defendants explain that the legitimate, nondiscriminatory reason for terminating Plaintiff is economic. They submit that Ruedinger made the business decision that it was not economically feasible to retain a full-time Night Manager. In her affidavit, Ruedinger indicated occupancy rates at Crown Reef decreased in the peak season of 2008 as the result of the sharp economic downturn, and continued to decrease further in the peak season of 2009. Ruedinger Aff. ¶¶ 20-21, ECF No. 39-16. She indicates that in October 2009, her superior Crosby suggested that she eliminate one of Crown Reef's ten management positions, one of which was that of Night Manager. *Id.* ¶¶ 22, 24. After analyzing the necessity of each management position, Ruedinger determined the Night Manager position could "best be eliminated without harming guest services." *Id.* ¶ 25.

Plaintiff acknowledges Defendants' proffered legitimate nondiscriminatory reason for his termination, noting the burden shifts back to him to prove, by a preponderance of the evidence, that Defendants' stated reason was not the true reason, but rather was a pretext for discrimination. *Dennis,* 290 F.3d at 646. In attempting to establish that Defendants' legitimate reason for termination was merely pretextual, Plaintiff "could attempt to establish that []he was the victim of intentional discrimination by 'showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Burdine*, 450 U.S. at 256).

In attempting to satisfy his burden of showing pretext, Plaintiff points to specific record evidence and explains why it is sufficient evidence of pretext. Pl.'s Resp. 14-19, ECF

No. 47.[8] Following is a brief summary of Plaintiff's evidence and arguments, as well as Defendants' responses in their Reply, ECF No. 78.

Plaintiff initially lists Ruedinger's alleged age-related statements that are discussed above as potential direct evidence of discrimination as also providing evidence of pretext. Pl.'s Resp. 14. He argues that Ruedinger's alleged statement during Plaintiff's final, May 2008, performance evaluation—that Plaintiff did not seem like the same person they had hired; maybe it was because of his age; and that maybe because of his age, the pressure of the job was getting to be too much for Plaintiff to handle—meant that Ruedinger believed Plaintiff could not perform his job because of his age. Pl.'s Resp. 14 (citing *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1499 (11th Cir. 1991)). Plaintiff also cites Ruediner's comment to Plaintiff when discussing a write-up with Plaintiff in August 2009, in which she supposedly told Plaintiff that he should be cautious about being written up again because someone his age would have difficulty finding another job, is further evidence of pretext. *Id.*

In response, Defendants emphasize that Ruedinger denies having made either of these remarks and note that Plaintiff's "uncorroborated testimony is the only evidence these remarks were ever made." Defs.' Reply 4, ECF No. 78. Further, Defendants contend these remarks are not evidence of pretext. *Id.* at 4-5.

Plaintiff argues that "[t]he most glaring and damaging evidence of pretext is the fact that defendants fired plaintiff allegedly because his job had been eliminated due to revenue issues." Pl.'s Resp. 15, ECF No. 47. Plaintiff argues that Defendants' reopening of the position in March 2010, only four-and-one-half months after terminating Plaintiff for financial reasons, and Defendants' hiring Arrowood, a significantly younger man into

---

[8] Some of this evidence is disputed by Defendants. By including this list here, the court does not purport to be making credibility determinations.

Plaintiff's position and paying him the same salary they had been paying Plaintiff only five months after terminating Plaintiff demonstrates that the reason Defendants gave for terminating him was pretextual. Plaintiff submits that Arrowood had previously left Defendants' employ on "bad terms at the height of defendants' busy season without sufficient notice." *Id.* at 16. Further, Plaintiff notes that Ruedinger reopened the position and hired Arrowood even though Defendants' revenue had not increased in the interim between Plaintiff's termination and Arrowood's hiring. In fact, Plaintiff notes that revenues had actually gotten worse during the interim. Pl.'s Resp. 16; *see* Ruedinger Dep. 101:11-102:18, ECF No. 83; Room Revenue Rpt., ECF No. 50-1. Ruedinger noted that Defendants' room revenue had been $10.9 million in 2008, reduced to $9.1 million in 2009, was $9 million in 2010, and was $7.8 million in 2011. Ruedinger Dep. 102:7-11, ECF No. 83; Room Revenue Rpt., ECF No. 50-1.

Plaintiff also argues that pretext is shown by Defendants' failure to follow a corporate policy in Defendants' handbook that indicates the "employer will normally give consideration to any known qualified individuals who are on lay off status before recruiting applicants from outside the organization." *See* Handbook 202.1(2), ECF No. 62. Plaintiff notes that Ruedinger acknowledged she was aware of the policies in the handbook and felt she was required to follow them. Ruedinger Dep. 34:11-35:20, ECF No. 55. Plaintiff submits that it is undisputed that he was qualified for the position. Pl.'s Resp. 17, ECF No. 47.  He pointed to evidence that, in all of his evaluations during nine years of employment by Defendants, Plaintiff was rated as "outstanding" or "above-average." Ruedinger Dep. 68:9-11, ECF No. 56. Ruedinger gave Plaintiff a favorable written reference when she fired him and she admitted that Plaintiff's termination was not related to performance. Further,

Ruedinger testified that, if Plaintiff's old position came open, he was eligible to be hired into the position. Ruedinger Dep. 88:19-21, ECF No. 83. In addition, Plaintiff notes Ruedinger's deposition testimony that, during a March 24, 2010 staff meeting, it was determined that Defendants "may have money for a temporary night manager position." Ruedinger Dep. 95:8-9, ECF No. 83. She testified that she "always knew" she would need a Night Manager, but noted the issue was whether she would have the funds to hire one. *Id.* at 95:19-21. When asked when she became aware she had the funds, she explained it had been sometime before March 24, 2010, when "one of the board of directors wondered who we were going to use for a night manager since [Plaintiff] wasn't there." *Id.* at 96:22-97:4. Ruedinger noted that Arrowood began working as the Night Manager on April 8, 2010. *Id.* at 97:5-7. She admitted that she never posted the position of Night Manager as being open anywhere, nor did she advertise it. *Id.* at 97:8-13. Ruedinger further admitted she did not call Plaintiff to advise him that the position was open. She stated that she "had no idea if [Plaintiff] was working or not[,]" noting that she "hadn't heard from him since he called [her] for his recommendation letter." *Id.* at 97:14-18. Plaintiff submits that these facts combine to demonstrate Defendants' stating Plaintiff was terminated for financial reasons was mere pretext.

In response, Defendants continue to maintain that Plaintiff was not "replaced" at all and that they did not fill what had been Plaintiff's full-time Night Manager position. Rather, Defendants characterize the facts as having "completely eliminated" Plaintiff's position and then creating another position for a Seasonal Night Manager. Defs.' Reply 6, ECF No. 78. They note that the position of Seasonal Night Manager was "a new position available on a temporary basis and contingent on funding." *Id.* Defendants point to Plaintiff's deposition testimony in which he indicated that he clearly understood at the time of his termination "the

job was eliminated, there would never be that job again." *Id.* (quoting Pl. Dep. 47:12-13; 52:24-25, ECF No. 47-1).

Further, regarding corporate rehiring policies, Defendants argue that the policy on which Plaintiff relies, Handbook Policy 202.1(2) is not applicable to him. Defs.' Reply 6, ECF No. 78. Rather, Defendants indicate a different section of Policy 202.1 is applicable to Plaintiff. They point to paragraph (9) of that section, which applies to rehiring "former employees" who left in good standing and were eligible for rehire. *Id.* (citing Policy 202.1(9), ECF No. 78-1). That policy indicates such former employees "may be considered for re-employment." *Id.* Defendants further argue that Plaintiff's own opinions regarding how corporate policy should have been deciphered and applied by Ruedinger do not satisfy Plaintiff's burden of demonstrating age bias. Defs.' Reply 6-7. They submit that Plaintiff's "perception" that Ruedinger misapplied the policies and should have called him and hired him rather than Arrowood "does not count." *Id.* at 7 (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)).

Plaintiff further submits that Defendants' promoting Howard as Night Manager in Spring 2011 at the same salary Plaintiff had earned in that position, while again not contacting Plaintiff about the position, provides additional evidence that Plaintiff's termination for economic reasons was pretextual. Pl.'s Resp. 18, ECF No. 47. Plaintiff also reiterates facts indicating Howard took over most of Plaintiff's duties of Night Manager in November 2009 when Plaintiff was terminated.

Defendants counter that Howard's "temporary assignment of the Seasonal Night Manager duties" during the 2011 peak season does nothing to further Plaintiff's case. Defs.' Reply 7. They submit the economics of increasing Howard's workload and increasing his

salary by $115 per week was more logical than hiring another employee at $580 per week. *Id.* They also point out that Plaintiff would have been unavailable then because of heart surgery. *Id.* at 7-8; Pl. Dep. 59-65.[9]

In addition, Plaintiff also points back to 2006, when Arrowood resigned, leaving an opening for the Night Manager position. Pl.'s Resp. 18, ECF No. 47. Plaintiff notes that, although he had been performing the Night Manager duties as of July 2006 when Arrowood left; Defendants hired a younger employee, Ann Lusk, rather than place Plaintiff in that position. *Id.* Plaintiff submits this is further evidence of pretext and violates Defendants' "clear policy in [their] handbook that defendants prefer to promote from within." *Id.* (citing Handbook Policy 202.1(2), ECF No. 62).

Defendants respond that Plaintiff's evidence regarding the 2006 hiring of Lusk is not germane to Plaintiff's ADEA claim. They note that Lusk was only ten years Plaintiff's junior, was familiar to Defendants in her capacity as a corporate trainer, and had degrees qualifying her for being hired. In addition, they present Ruedinger's testimony that she had preferred to transfer Plaintiff to the Night Manager position in 2006, but was "overruled" by her superior, Crosby. Ruedinger Dep. 53:16-54:3, ECF No. 56. When Lusk resigned in 2007, Ruedinger transferred Plaintiff to the full-time Night Manager position.

Plaintiff also argues the fact that he was not given a performance evaluation in 2009 is evidence that Defendants intended to terminate him and did not want an evaluation given in that year to provide evidence that could be used against them. Pl.'s Resp. 18, ECF No. 47. Plaintiff notes that Defendants told him no one was given an evaluation in 2009, although discovery revealed Howard had been evaluated in 2009. *Id.* In response, Defendants provide

---

[9] The court has been unable to locate these pages of Plaintiff's deposition in the record.

Ruedinger's testimony that employees did not receive evaluations in 2009 because of the salary freeze Crosby had initiated. Defs.' Reply 9-10, ECF No. 78 (citing Ruedinger Dep. 61:9-21, ECF No. 56). Defendants indicated Howard had received a 2009 evaluation because he had been transferred from being an hourly employee to a salaried employee in order to save on overtime expenses during the upcoming peak season for 2009. *See* 2d Ruedinger Aff. ¶¶ 5, 7, 8, ECF No. 78-3. Ruedinger explained that no employee who remained in their current position in 2009 received an evaluation in 2009. *Id.* ¶ 11.

Having considered these facts and arguments, as well as case law cited, the undersigned is of the opinion that Plaintiff has submitted sufficient evidence of pretext to survive Defendants' Motion for Summary Judgment. In recommending summary judgment be denied, the court is mindful of the Fourth Circuit Court of Appeal's admonition against second guessing economic decisions. As the court noted in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507:

> The ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges. [The employer's] layoff decisions here reflected business realities, not age discrimination, and the district court properly granted judgment as a matter of law.

*Id.* at 153. In another reduction-in-force case, *Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004), the Fourth Circuit affirmed summary judgment in a case in which the employer decided to eliminate the plaintiffs' scientist positions because of the employer-agency's shifting demands. In finding the employer had satisfied his burden of demonstrating a legitimate, nondiscriminatory reason for terminating the plaintiffs, the court noted that such "strategic business decision[s]" constituted a "legally sufficient justification." *Id.* at 335-36. As the court noted in *Henson v. Liggett Group, Inc.*, 61 F.3d 270 (4th Cir. 1995), though, the

"importance of giving an employer latitude and autonomy to make business decisions, including workplace reorganization," nonetheless requires that the "employer does not violate the ADEA." 61 F.3d at 277.

Considering all of the facts presented by Plaintiff to prove that Defendants' economic rationale for terminating Plaintiff was pretextual, the undersigned is of the opinion that Defendants' Motion for Summary Judgment should be denied. Certainly, as far as it goes, Defendants' argument that the decision to "eliminate" Plaintiff's position of Night Manager, thereby terminating him, is the type of business decision the courts will not second guess or find cannot be a sufficient legitimate, nondiscriminatory reason for Plaintiff's termination. *See Birkbeck*, 30 F.3d at 153; *Mereish*, 359 F.3d 335-56. Such deference, however, cannot be permitted at the expense of the ADEA. In isolation, based solely on available November 2009 financial information, the decision to terminate Plaintiff at that time may have been an apparently sound, nondiscriminatory business decision. However, the court's duty is to examine all of the record evidence as a whole in determining whether Plaintiff has presented viable questions of fact regarding whether his November 2009 termination was effected because of his age. Plaintiff has demonstrated sufficient evidence to show that, when he was terminated, many of his duties were shifted to the substantially younger Howard. More telling, though, is that Defendants revived the Night Manager position fewer than five months later and hired Arrowood, who was some 13-14 years younger than Plaintiff. That they hired Arrowood, in and of itself, may not be sufficient to permit Plaintiff to survive summary judgment. However, Ruedinger admits that she obtained corporate approval to reinstitute the position of Night Manager sometime before March 24, 2010, and did not post the position or advertise it as available, let alone contact Plaintiff to inform him that they

would be hiring a Night Manager at the start of the 2010 tourist season. Ruedinger Dep. 97:8-18, ECF No. 83. Plaintiff points to Defendants' corporate policy as proof that consideration should be given to qualified individuals in lay-off status when filling positions. Defendants do not argue that Plaintiff was not qualified as a Night Manager; rather, they argue a different portion of their corporate policy applied to Plaintiff after he had been laid off.

At this stage of the summary-judgment analysis of this ADEA claim, it is not the court's task to decide whether Plaintiff's or Defendants' post-hoc analysis of corporate policy indicated Plaintiff should have been given consideration as an employee under lay-off status or not. Rather, the court is to make the determination of whether Plaintiff has presented sufficient evidence to convince a reasonable juror that Defendants' actions demonstrate they violated the ADEA in terminating Plaintiff and not informing him of or considering him for the seasonal version of his former position. Critically, Plaintiff has presented evidence that Defendants' financial situation had worsened at the time they opened the position of Seasonal Night Manager. With no corresponding change of economic status, Defendants determined to hire a Night Manager and hired one, without posting the opening in any manner, let alone informing Plaintiff. They hired Arrowood, paying him approximately the same amount they had paid Plaintiff. The following year, they again hired a Seasonal Night Manager, Howard, who was even younger than Arrowood. Again, Defendants economic situation had not improved. *See* Ruedinger Dep. 102:7-11, ECF No. 83; Room Revenue Rpt., ECF No. 50 (indicating Defendants' room revenue was $10.9 million in 2008; $9.1 million in 2009, $9 million in 2010, $7.8 million in 2011).

Having considered all evidence presented, the undersigned is of the opinion that Plaintiff has satisfied his burden of demonstrating pretext. *See generally Bishop v. Thomas*

*Howard & Co., Inc.*, C/A No. 3:05-3612-JFA, 2008 WL 687493 (D.S.C. Mar. 11, 2008) (denying employer's motion for summary judgment as to a portion of employee's ADEA claim because employee presented evidence corporate policy indicated he was not required to formally apply for position after having been laid off and question of fact existed regarding whether employee had demonstrated employer's proffered reason for not offering employee another position after his lay-off/termination was pretextual); *see also Easterling v. YMCA of Metro. Dallas*, No. Civ. A. 3:01-CV-0299M, 2002 WL 31245420 (N.D. Tex. Oct. 2, 2002) (denying summary judgment because issues of fact existed as to pretext when employer indicated plaintiff's job had been eliminated to save cost of his salary and plaintiff proffered evidence that, soon after his termination, defendant announced plans to hire a replacement for plaintiff and again incur the costs of plaintiff's salary).

> E.  Defendants Argue They are Entitled to Strong Inferences of Nondiscrimination Because Ruedinger was an Older Employee ("Same Actor"/*Proud v. Stone*)

In their Motion, Defendants urge the court to give them the benefit of an inference of nondiscrimination based on *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991). In *Proud*, the plaintiff brought an age discrimination claim after he was fired six months into his job. The court held that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Id.* at 797. The court reasoned that it would appear to be irrational that the same individual who hired someone and then fired them several months later would be firing them based on age animus. *Id.* The court also noted that it could "imagine egregious facts from which discharge in this context could still be proven to have been discriminatory[,]" but found such facts were not present in *Proud*. 945 F.2d at 798.

In *Mitchell v. Data General Corp.*, 12 F.3d 1310 (4th Cir. 1993), the court found the *Proud* inference applicable when the same manager who had promoted the plaintiff, an 11-year employee of the corporate employer, then placed the employee on the reduction-in-force list four months later. 12 F.3d at 1318. The court discussed the plaintiff's argument that if the *Proud v. Stone* inference were applied in the reduction-in-force context, "there would be nothing left of the ADEA where an employer is in the midst of several reorganizations, since an employer would be insulated from suit after the first reorganization." *Id.* In that case, the court found, though, that, even when considering the *Proud v. Stone* inference, the court would still be able to look past the reorganization to determine whether "the moves were in fact a 'shell game' to avoid liability." *Id.* In *Mitchell*, the court indicated it had found no shell-game-type moves. *Id.* Finding the plaintiff had established neither a prima facie case nor pretext, the court affirmed the district court's entry of summary judgment for the defendant. *Id.*

In this case, Ruedinger promoted Plaintiff to Loss Prevention Supervisor in 2004, and she testified that she wanted to promote Plaintiff to Night Manager in 2006, but was overruled by her superior, Crosby, who decided to hire Lusk for that position at that time. Ruedinger Dep. 53:16-54:3, ECF No. 54. In 2007, after Lusk resigned, Ruedinger named Plaintiff as acting Night Manager, and removed the "acting" from his title later that year. Two years later, in November 2009, Ruedinger made the decision to terminate/lay-off Plaintiff.

Here, both parties note that the "relatively short time span" required by *Proud* is not fixed. Defs.' Mem. 18-19, ECF No. 39; Pl.'s Resp. 20, ECF No. 47.  Defendants argue the two-year time period between Ruedinger's promoting Plaintiff and terminating him was a

sufficiently short one to require the inference be applied. Plaintiff submits the two-year spread is too long for application of the inference. Defendants further submit that there are no "egregious facts" that would prevent the inference, arguing the inference requires summary judgment be entered in their favor. In response, Plaintiff again points to the age-based remarks he claims Ruedinger made to him, submits Ruedinger only "begrudgingly" promoted him to Night Manager, and argues he has provided sufficient evidence to overcome the inference Defendants seek. Pl.'s Resp. 20-22. Further, Defendants submit that Plaintiff has not provided sufficient evidence of age animus to survive summary judgment.

Having considered the arguments of both parties, the undersigned is of the opinion that, even applying the *Proud v. Stone* "same-actor" inference, Defendants' Motion for Summary Judgment should not be granted as to Plaintiff's ADEA termination claim. As discussed in detail above, the court has closely considered all evidence presented by the parties and is of the opinion that the facts—particularly the failure to disclose the position of Seasonal Night Manager to Plaintiff when it became open, funded, and available some four-to-five months after informing him his position no longer existed for financial reasons— present facts from which a reasonable juror could find that Plaintiff would not have been terminated in November 2009 but for his age. In *Proud*, the court noted the inference may not always be available if review of the facts did not indicate the inference or summary judgment was appropriate. *See* 945 F.2d at 798, Later, in finding the inference could be applied in the promotion context in reduction-in-force situations, the court again noted the inference could always be tempered and that a court would never be prevented from looking at all of the facts. *Mitchell*, 12 F.3d at 1318. For the reasons more fully discussed in the detailed analysis of Plaintiff's presentation of evidence to demonstrate pretext, the

undersigned is of the opinion that the "same actor" presumption should not operate to grant summary judgment to Defendants.

      F.  Plaintiff's Failure-to-Recall Claim

In responding to Defendants' Motion, Plaintiff specifically points out that he is claiming Defendants violated the ADEA in two ways on separate occasions: first, by terminating him in November 2009; second, by failing to recall Plaintiff back to work in March of 2010 and again in the spring of 2011. Pl.'s Resp. 22, ECF No. 47. Plaintiff submits that evidence that an employer failed to recall an employee after a lay-off can provide evidence to support his termination-discrimination claim as well as separate failure-to-recall claims. *Id.* Plaintiff briefly cites to a case from the Sixth Circuit Court of Appeals as support, and notes that Defendants did not address the failure-to-recall claims in their brief in support of their Motion for Summary Judgment. Pl.'s Resp. 22 (citing *Wanger v. GA Gray Co.*, 872 F.2d 142 (6th Cir. 1989)). Plaintiff offers no further analysis regarding these separate claims, other than to reiterate his evidence that Defendants violated their own recall policies in not bringing Plaintiff back to work and noting that Ruedinger indicated she was required to follow the corporate policies. Pl.'s Resp. 22.

Despite Plaintiff's pointing out his failure-to-recall claims as being separate from his termination claim, Defendants do not specifically address those separate claims in their Reply. *See* Defs.' Reply, ECF No. 78.  As discussed above, Defendants do discuss Plaintiff's argument concerning the failure to recall him in 2010 and 2011 in connection with Plaintiff's termination claim. *Id.* at 6-8.

In the only case cited by Plaintiff on this issue, the Sixth Circuit Court of Appeals set forth the following "modified *McDonnell-Douglas* test" for making out "a prima facie case

of age discrimination in a failure-to-rehire" context: a plaintiff must establish "(1) that he is a member of the protected age group; (2) that he is qualified for the rehire or recall position; (3) that he applied for the available position or can establish that the employer was otherwise obligated to consider him; and (4) that the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring he was denied a position because of his age." *Wagner*, 872 F.2d at 145. Plaintiff has cited no cases from the Fourth Circuit that discuss this type of separate claim, nor has the court's independent research revealed cases from the Fourth Circuit addressing such a separate claim. On the other hand, the court is aware of no Fourth Circuit case finding such a separate claim does not exist.

Based on the evidence presented by Plaintiff and discussed above, the undersigned is of the opinion that Plaintiff has at least presented evidence related to each of the elements set forth by the Sixth Circuit. *See Wagner*, 872 F.2d at 145. Defendants have not expressly addressed this as a separate ADEA claim, nor have they argued that such a separate claim does not exist. Accordingly, assuming but not deciding that such a separate claim is recognized in the Fourth Circuit, and based on the record currently before it, the undersigned is of the opinion that Plaintiff has set forth a prima facie case of a separate failure-to-recall claim. Because neither party has specifically discussed the separate claim beyond this stage, and because Defendants have not included such a separate claim in their Motion, it cannot be recommended that Defendants are entitled to summary judgment on such a claim.

G. Defendant Jordan Seeks Dismissal Because Not Plaintiff's "Employer" At Time of Termination

Defendant Jordan Properties seeks summary judgment as to Plaintiff's claims, arguing it is not an "employer" subject to Plaintiff's ADEA claims. Defs.' Mem. 22, ECF No. 39. Defendants contend that, although Jordan Properties initially employed Plaintiff in

2003, Defendant Crown Reef became his employer in 2005 and continued as his employer until his 2009 discharge. *Id.* Defendants submit that Jordan Properties and Crown Reef are not a "single employer" under the "integrated employer test" for ADEA purposes and that Plaintiff cannot provide evidence supporting a "single employer theory under the 'integrated employer' test." *Id.* at 22 & n.6 (citing *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 n* (4th Cir. 1987), and *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)).

In response, Plaintiff submits that Defendants misunderstand his theory. Pl.'s Resp. 22-23, ECF No. 47. He explains that he does not seek to hold both Defendants liable under an integrated employer theory, which he indicates is often used to combine two employers when one or both of them singly do not employ the requisite number of employees to meet the definition of "employer" under Title VII or the ADEA. *Id.* Rather, Plaintiff indicates he is seeking to have both Defendants found to be liable based on the distinct "joint employer theory." *Id.* at 22. As Plaintiff explains, the joint employer theory recognizes that an individual may be the employee of more than one "employer" for purposes of Title VII or the ADEA. *Magnuson v. Peak Tech. Servs., Inc.* 808 F. Supp. 500, 508 (E.D. Va. 1992). In *Magnuson*, the court considered whether an entity was an employer for purposes of Title VII and found the analysis required a defendant to fall within Title VII's statutory definition and to "have exercised substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment." 808 F. Supp. at 507. The court noted that one could be an "employer" for purposes of Title VII without being an employer in conventional terms, but by controlling "some aspect of an individual's compensation, terms, conditions, or privileges of employment." *Id.* at 507-08 (internal quotation marks omitted). Plaintiff submits that the same analysis of control is appropriate in determining whether one

is an employer for purposes of the ADEA, as well, noting the definition of "employer" is identical in the two statutory schemes. Pl.'s Resp. 24. Defendants do not specifically argue against Plaintiff's characterization of the test to be applied, nor do they dispute that cases interpreting Title VII's definition of "employer" may be instructive in the ADEA context.

Although Defendants submit the law is in flux regarding whether the joint employer theory is separate from the integrated employer theory, Defs.' Reply 11-13, ECF No. 78, they agree that the real issue before the court is whether the putative employer—Jordan Properties—exercised the requisite amount of control over Plaintiff. *Id.* at 12. In any event, the parties agree that determination of whether Jordan Properties exercised "control" over Plaintiff is the relevant inquiry. Further, one of the cases Defendants cite, *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925 (D.S.C. 1997), discusses the *Magnuson* case referred to by Plaintiff, and reiterates that to be an "employer," pursuant to federal employment statutes, an entity must exercise the "requisite control" over the plaintiff/employee. 988 F. Supp. at 934-36 (in Title VII context). In *Grimes*, the court noted the Fourth Circuit uses the "hybrid" test from *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C. Cir. 1979), to determine whether a plaintiff is an employee under the statute (Title VII). 988 F. Supp. at 935. The hybrid test hinges on control as the "most compelling" factor to consider. *Id.* In *Grimes*, the court noted considerations such as control over work assignments, manner of performance, hours, and right to discharge were key indicators of control. *Id.*

Both parties set forth facts in an attempt to establish Jordan Properties did/did not exercise sufficient control over Plaintiff to be considered his employer for purposes of ADEA. Plaintiff submits Ruedinger's deposition testimony in which she indicated that, as of 2009, she was an employee of, and paid by, Defendant Jordan Properties and that, at that

same time, Crosby was Jordan Properties' President and CEO. Ruedinger Dep. 17:25-20:6, ECF No. 55. Because Ruedinger and Crosby were employees of Jordan Properties in 2009, Plaintiff claims Jordan Properties exercised sufficient control over him because, after 2006, Ruedinger and Crosby made all decisions regarding Plaintiff's duties at Crown Reef, set his pay, evaluated him, promoted him, disciplined him, and terminated him. Pl.'s Resp. 24, ECF No. 47. Plaintiff submits that various Jordan Properties forms signed by Ruedinger and Crosby demonstrate this control. *See, e.g.,* Ex. 2 to Ruedinger Dep., documents with bates numbers 0014-17 (Sept. 1, 2004 Payroll Status Change on Jordan Properties form), ECF No. 57; 0023-24 (Nov. 14, 2005 Review, missing first page), ECF No. 58; 0026-29 (Oct. 2006 Payroll Status Change, Evaluation on Jordan Properties form), ECF No. 58; 0031, 0032-34 (Mar. 2007 Payroll Status Change, Evaluation on Jordan Properties forms), ECF No. 58; 0038, 0039-44 (May 2008 Payroll Status Change, Evaluation on Jordan Properties form), ECF No. 59; 0050 (Sept. 18, 2008), 0056 (Oct. 16, 2008 Mem. to Pl. from Ruedinger giving 90 days to reach goals in learning property management system, on "Crown Reef" letterhead), 0057 (Mar. 2009 Mem. from Crosby to Ruedinger, *et al.*, regarding moratorium on employee raises at Crown Reef, on Jordan Properties letterhead), ECF No. 59; 0069 (Aug. 6, 2009 "Jordan Properties Employee Warning; Property: Crown Reef Resort" form, regarding Pl.), ECF No. 59; 0074 (Nov. 2, 2009 Jordan Properties Payroll Status Change form indicating Pl.'s discharge), 0075-76 (Nov. 2, 2009 and Nov. 3, 2009 Jordan Properties Termination Reports regarding Pl.), ECF Nos. 59-60; 0085 (Jan. 15, 2007 Ltr. to Pl. from Director of Human Resources, Jordan Properties, on Jordan Properties letterhead, regarding FMLA), ECF No. 60; Crown Reef Handbook, which includes Jordan Properties Logo, ECF Nos. 61-74; 0086-87 (Pl.'s vacation request and sick day paperwork on Jordan Properties,

Inc. forms), ECF No. 60; 0104-110 (Policies, including Code of Employer-Employee Relations, Equal Employment Opportunity, Rescinds and Grievance Procedure, provided on Jordan Properties forms), ECF No. 60; Plf. Bienkowski bates numbers 0046-49 (July 22, 2010 Ltr. from Elizabeth Gladson, Director and Deanna Williamson, HR Administrator of RL Jordan Oil Co. to EEOC responding to Pl.'s charge, written on Jordan Properties letterhead, which lists "Corporate" as being located at 2913 South Ocean Blvd. in Myrtle Beach, SC, where Crown Reef is located), ECF No. 50-2.

In addition to the documentary evidence, Plaintiff argues that Jordan Properties exercised sufficient control over him for purposes of the ADEA because Jordan Properties and Crown Reef are owned by the same persons, share the same directors, and use employees interchangeably. Pl.'s Resp. 26. The only evidence Plaintiff cites to support this factual argument is his own testimony.

In response, Defendants indicated Ruedinger's deposition testimony that she and Crosby were employees of Jordan Properties as of 2009 was a mistake of fact that ignored the undisputed affidavit of Wilton Jordan, one of the sons of Robert Lee Jordan with knowledge of the corporate structure of both Defendants. Defs.' Reply 12-13, ECF No. 78; Wilton Jordan Aff., ECF No. 39-15. In her deposition, Ruedinger testified she became an employee of "Crown Reef Resort Limited" after Robert Lee Jordan passed away but she was not sure when he had passed away. Ruedinger Dep. 18:3-11, ECF No. 55. In her affidavit, Ruedinger indicated she had become an employee of Crown Reef, LLC in 2005. Ruedinger Aff. ¶ 5, ECF No. 39-16. Wilton Jordan explains that his father, Robert Lee Jordan, created Crown Reef, LLC in 2005, and that, at that time, all employees of Jordan Properties became Crown Reef, LLC employees with the exception of Woody Crosby, President of Jordan

Properties, and Crosby's assistant. Wilton Jordan Aff. ¶ 13, ECF No. 39-15. Wilton Jordan explains that, "beginning in 2007, the President and his assistant were also employed by Crown Reef, LLC, such that since 2007, Jordan Properties conducted no business and had no revenues or expenses." *Id.* Wilton Jordan further testifies that, as of the time of his July 2, 2012 affidavit, "Jordan Properties has no employees, revenue or expenses." *Id.* ¶ 14.

Defendants submit that, because Jordan Properties has been an "empty shell" since 2007, it was impossible for it to exercise any control over Plaintiff in 2009. Defs.' Reply 13, ECF No. 78. They conclude by arguing that "[t]he law cannot be that non-employers are exposed to ADEA liability under a "joint employer" theory based on nothing more than logos and letterheads." *Id.*

Having considered these facts in the light most favorable to Plaintiff, the nonmoving party, the undersigned finds that Defendant Jordan Properties was not an "employer" of Plaintiff for purposes of ADEA liability.[10] The court accepts Defendants' clarification of the record concerning when Mr. Jordan passed away and notes that, as of 2007 Ruedinger and Crosby were employees of Crown Reef Hotel, LLC. *See* Wilton Jordan Aff. ¶ 13, ECF No. 39-15; *see also* Ruedinger Aff. ¶ 5, ECF No. 39-16 (stating she was employee of Jordan Properties until 2005, when Crown Reef Hotel, LLC because the company that managed and operated the hotel). *Cf. Collins v. Network Exp., Inc.*, Civil Action No. 4:08-1564-RBH, 2008 WL 4280382, *3 (D.S.C. Sept. 12, 2008) (finding resolution of factors concerning whether plaintiff was employee or independent contractor for purposes of Title VII, ADEA, and ADA claims could be determined on summary judgment, even evidence that could support either).

---

[10] It is not disputed that Defendant Crown Reef is Plaintiff's "employer" for purposes of the ADEA.

"Jordan Properties" continues to exist in some form, as evidenced by the July 22, 2010 letter sent to the EEOC contesting Plaintiff's claim of age discrimination. Ltr., ECF No. 50-2. The letter was written on "Jordan Properties" letterhead and indicates that "Corporate," "Operations," "Sales/Marketing," and "Human Resources" are all located at 2913 South Ocean Boulevard in Myrtle Beach, South Carolina, where the Crown Reef Resort is located. The letter is signed by "Elizabeth Gladson, Director" and "Deanna Williamson, HR Administrator, RL Jordan Oil Company." *Id.* at 5. Nonetheless, the letter explained to the EEOC that, although Jordan Properties had once owned and operated various hotels in North and South Carolina, Jordan Properties sold all of the hotels except the Crown Reef Hotel, and the corporate name was changed to Crown Reef Resort, LLC. *Id.* at 1. Further, that Jordan Properties forms and letterhead are used is not dispositive of the control analysis.

It is undisputed that Ruedinger and Crosby made decisions regarding Plaintiff's employment. Relevant to Plaintiff's suit, Ruedinger made the decision to terminate Plaintiff. Discounting Ruedinger's obviously mistaken testimony that she remained an employee of Jordan Properties in 2009, it is plain that day-to-day decisions regarding Plaintiff's employment as Night Manager, his termination in 2009, and the decision not to post job openings for Seasonal Night Manager in later years were made by Ruedinger, who was then employed by Crown Reef.  Defendant Crown Reef exercised the requisite control over Plaintiff. Defendant Jordan Properties did not. Accordingly, it is recommended that Defendant Jordan Properties Motion for Summary Judgment on this point be *granted*.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment, ECF No. 39, be *granted* as to Defendant Jordan Properties, Inc., and *denied* otherwise.

IT IS SO RECOMMENDED.

February 14, 2013                                     Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**